UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:21-CR-01510-KWR |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Albuquerque, New Mexico |
| | ) | |
| CHRISTOPHER MARQUEZ, | ) | Monday, November 15, 2021 |
| | ) | |
| Defendant. | ) | (1:11 p.m. to 1:35 p.m.) |

DETENTION HEARING

BEFORE THE HONORABLE LAURA FASHING,
UNITED STATES MAGISTRATE JUDGE

**APPEARANCES:**           SEE PAGE 2

U.S. Pretrial/Probation: Mindy Pirkovic

Court Reporter:          Recorded; Liberty: HONDO-REMOTE

Clerk:                   N. Maestas

Transcribed By:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES:**

| | |
|---|---|
| For Plaintiff: | ALEXANDER FLORES, ESQ.<br>U.S. Attorney's Office<br>P.O. Box 607<br>Albuquerque, NM 87103 |
| Also present: | Agent Vigil |
| For Defendant: | DEVON FOOKS, ESQ.<br>Federal Public Defender's Office<br>111 Lomas Blvd. NW, Suite 501<br>Albuquerque, NM 87102 |

**Albuquerque, New Mexico; Monday, November 15, 2021; 1:11 p.m.**

**(Video Teleconference Hearing)**

**(Call to Order)**

**THE COURT:** Good afternoon, everybody. We are here for the afternoon docket. We are -- we're here first for a continuation on a case that we started on Friday, so why don't we go ahead and call that case and we'll go from there.

**THE CLERK:** *United States v. Christopher Marquez.*

**THE COURT:** May I have appearances, please?

**MR. FLORES:** Good afternoon, Your Honor. Alexander Flores for the United States.

**MR. FOOKS:** Devon Fooks on behalf of Mr. Marquez, Your Honor.

**THE COURT:** All right. Good afternoon, Mr. Marquez. We are here again on the continuation for your detention hearing. The continuation was from Friday. But before we get started, I want to make sure that you've had an opportunity again at some point to talk to Mr. Fooks about the fact that we'd be doing this by video. Did you have a chance to talk to him about that?

**THE DEFENDANT:** I talked with him briefly this morning but I haven't signed the paper yet saying that I'm waiving the appearing in person, Your Honor.

**THE COURT:** Okay. Yeah, I guess -

**MR. FOOKS:** We did send that over, Your Honor.

1 **THE COURT:** Sent it to the facility?

2 **MR. FOOKS:** That's my understanding, yes.

3 **THE COURT:** Okay. I guess -- well, we're just having some trouble getting the waivers in from Santa Fe but let me just talk to you about this orally, Mr. Marquez.

6 So you did have a chance to speak with Mr. Fooks about the fact that we'd be doing this by video, right?

8 **THE DEFENDANT:** Yes, Your Honor, last -- on Friday.

9 **THE COURT:** Okay. Did you agree that it was okay to go forward by video?

11 **THE DEFENDANT:** Yes, Your Honor.

12 **THE COURT:** Okay. Did anybody threaten you to get you to agree to that or force you to agree to that?

14 **THE DEFENDANT:** No, Your Honor.

15 **THE COURT:** All right. I find that you have knowingly and voluntarily waived your right to be personally present in the courtroom for this hearing and that instead you've agreed to proceed by video.

19 And Mr. Fooks, just if you ever get a waiver, if you could submit it.

21 **MR. FOOKS:** (indisc.) to send it to you.

22 **THE COURT:** All right. So I believe that we had a continuance, Mr. Fooks, because the Government proffered quite a bit of evidence at the hearing on Friday and you wanted to have an opportunity to look over some of the evidence that was

1  proffered.  And so let me ask --
2          Well, first let me ask Mr. Flores, did you have
3  anything in addition to what you already have presented,
4  anything in addition to present here today or are you finished
5  with your presentation?
6          **MR. FLORES:**  Your Honor, the United States is
7  prepared to rest on the proffer.  Agent Vigil (phonetic) is
8  present if the Court has further inquiry.  But since Mr. Fooks
9  wanted to review the material and may have had a change, or
10 maybe not, in his position as to the matter, for now that's all
11 we have.
12         **THE COURT:**  Okay.  Actually I have one question -- a
13 couple of questions.  You had noted I think in your proffer
14 that the child victim in this case had been admitted to the
15 hospital, is that right?
16         **MR. FLORES:**  Yes, Your Honor.
17         **THE COURT:**  When was he/she, I don't know the sex?
18         **MR. FLORES:**  She was admitted on or about July the
19 10th to Presbyterian Espanola Hospital.  She was evaluated
20 there and began to receive blood transfusions before she was
21 life flighted to the University of New Mexico Hospital Trauma
22 Center for follow-on care and evaluation by the Child Abuse
23 Response Team.
24         **THE COURT:**  Is she still in the hospital or has she
25 been released?

1   **MR. FLORES:** She was released only days thereafter
2  this happened.
3       **THE COURT:** Okay. And I take it, given the date, was
4  that the events that alerted authorities to this situation?
5       **MR. FLORES:** Yes, Your Honor. So the child victim
6  and her mother escaped from the home while the Defendant was
7  sleeping, sometime early in the morning, 4:00 or 5:00 a.m., and
8  went out to a highway where they essentially hitchhiked. They
9  were picked up and taken to a safe location at a random
10 passerby's home nearby, where they contacted authorities and
11 then police and an ambulance responded.
12      **THE COURT:** All right. All right, so with that,
13 Mr. Fooks, I'll allow -- I don't know how you'd like to
14 proceed. Do you want to cross examine the agent? Do you want
15 to --
16      **MR. FOOKS:** No, Your Honor, I don't. I would like to
17 make some argument, though.
18      **THE COURT:** Okay. All right, I'll go ahead and hear
19 from you.
20      **MR. FOOKS:** Thank you, Your Honor.
21      Your Honor, first off with regard to whether
22 Mr. Marquez is a flight risk, I take issue with a couple of
23 things that appeared in the Pretrial Services Report. I would
24 like to point out to the Court that Mr. Marquez owns his home,
25 he's lived there for quite some time. The idea that he was

1 fleeing from law enforcement or was trying to avoid arrest
2 seems somewhat fanciful. He doesn't -- he's not currently
3 employed. He hasn't worked for about a year. Not because he
4 hasn't wanted to, but because, like many people, he was laid
5 off due to COVID. But he's been at the same house pretty much
6 all day, every day. I guess I'm a little bit concerned about
7 perhaps the efforts that law enforcement made to actually
8 arrest him since he, like I said, has been there and hasn't
9 moved. He's been there for quite some time, as far as I can
10 tell from my conversations with him.
11 So his residence is stable. He is not a flight risk.
12 He doesn't -- you can see from the Pretrial Services Report for
13 him to be able to flee the jurisdiction would be very difficult
14 if he was inclined to do so, which he is not. His family is
15 from New Mexico. His mother still resides here. He's got
16 plenty of community contacts. But even, let's just kind of go
17 there for a minute, he doesn't really have the funding to go
18 anywhere. He's living off government assistance. He's got
19 children who live in the jurisdiction. So he really does not
20 have any inclination to run or desire to run.
21 And, in fact, he never has in the past either. When
22 we had the first evidence hearing earlier which was late last
23 week there was some mention of some prior arrests. There are
24 no failures to appear. Mr. Marquez has always appeared for --
25 he's always appeared for court. He has served probation on at

1 least one other case.  He completed that probation successfully
2 without any violations.  So there's no reason to believe that
3 Mr. Marquez is unwilling or unable to comply with orders put
4 into place by this Court.
5 　　　　　He was ordered to do some counseling when he was
6 in -- when he was on probation before.  In fact, when he
7 successfully completed his probation he, on his own, continued
8 to attend the counseling because he thought it was helpful to
9 him.
10 　　　　　He doesn't have an alcohol problem.  He doesn't have
11 a drug problem.  So there's nothing of that nature to get in
12 the way of him abiding by any orders that this Court should put
13 in place or any condition or combination of conditions that
14 this Court could put into place.
15 　　　　　We are asking that you allow him to return home to
16 his house.  The alleged victims in this case, as I understand
17 it from my review of the discovery, I believe one is from the
18 Taos Pueblo, but they reside in Zuni, which is quite aways away
19 from where Mr. Marquez resides in San Juan Pueblo.  And, in
20 fact, it's my understanding from reviewing discovery that those
21 individuals are not even staying in Zuni, they're staying
22 someplace else.  That location is unknown to Mr. Marquez, as
23 far as I know.  So there's no concern that there would be any
24 contact with any witnesses or alleged victims in this case.
25 　　　　　More importantly, regarding the -- whether or not

1  Mr. Marquez is a danger to anyone, and more importantly to the
2  strength of the case, respectfully I understand Mr. Flores's
3  position but I respectfully disagree.  This is a situation
4  where -- that we frequently run into and it's a matter of one
5  person's word against another person's word.  Obviously, Jane
6  Doe Number 2, I believe it is, the mother of Jane Doe Number 1,
7  has one version of events and Mr. Marquez has another.
8              I did have an opportunity to review the medical
9  records related to the child who is involved in this case.  But
10 what I did not notice from reviewing discovery which goes to
11 Counts Two and Three is that I didn't notice any medical
12 records or photographs related to the alleged strangulation or
13 photographs or medical records related to the alleged sexual
14 contact.  So again, it would seem as though we are -- the only
15 records we do have are an interview from -- with the sexual
16 assault nurse examiner.  And again, there's no physical
17 evidence to support the alleged victim's rendition or version
18 of the events.
19             And so, while I understand the Government's case is
20 very strong, as I see it, it appears to be a he said/she said
21 and so I don't think the case is terribly strong.  And on top
22 of that, I think there are conditions which can be put into
23 place.  Certainly, no contact with the alleged victims is
24 appropriate and it doesn't seem like there's a possibility for
25 that to happen in any event.  There's no concern, I don't think

1  that the Court should have any concerns about whether or not
2  Mr. Marquez is able to follow Your Honor's conditions that you
3  place on him.  He doesn't have a history of being able to -- of
4  not being able to follow a Court's orders.
5         So regardless of what the Government believes the
6  strength of the case is, there are a combination of conditions
7  that can be put into place to assure that Mr. Marquez appears
8  in court, as ordered to do so, and also to protect the
9  community as well.  So we would ask that Your Honor consider
10 releasing him to his home with conditions or consider releasing
11 him to the La Pasada Halfway House while the case is pending.
12        **THE COURT:**  Mr. Flores, and I may have asked you this
13 on Friday, and if I did I apologize, but I don't remember the
14 answer.  And, Mr. Fooks, if you know the answer to any of these
15 questions also.  You know, we have several -- in the Pretrial
16 Services Report there is records where the disposition is
17 unknown with respect to all of the charges.  One is an
18 aggravated battery against a household member attempt, but
19 third offense, and that's from 2013, disposition unknown.  Do
20 we know who the victim was in that case?
21        **MR. FLORES:**  We do have those records, Your Honor, in
22 the reports that both counsel have.
23        **THE COURT:**  Okay.  Do you know -- I mean do you know
24 the disposition?
25        **MR. FLORES:**  I do not, Your Honor.  So it looks like

1   what the BIA agent received has disposition unknown as well,
2   just like Pretrial Services received.
3          **THE COURT:**  Do we have -- do we know who the victim
4   was?
5          **MR. FLORES:**  Yes.  We have several police reports
6   from those instances.
7          **THE COURT:**  Why don't you just give me a brief -- I'm
8   just interested in the aggravated battery allegation and also
9   the battery against a household member allegation in 2019.
10         **MR. FOOKS:**  Mr. Flores, if I may, if you're referring
11  to the discovery that you sent if you could just tell me the
12  page number you're looking at so I can follow along?
13         **MR. FLORES:**  Sure.  I need to find it and I'm going
14  to let you know.  Apologies.
15         And, Your Honor, I don't know if Agent Vigil has that
16  off the top of his head as I'm looking for it.  He may be able
17  to questions along these lines if you'd like.
18         **THE COURT:**  Agent Vigil, do you know the information
19  that I'm asking for?
20         **AGENT VIGIL:**  Can you hear me, Your Honor?
21         **THE COURT:**  Yes.
22         **AGENT VIGIL:**  Okay.  There's a few different ones.
23  I'll start with the most recent one.  It was a -- there was a
24  household member, Mr. Mark (phonetic) is the victim, and they
25  were involved in a verbal altercation and he pushed the victim,

1    the victim pushed him back, and they were stopped here.  That
2    was the first one, ma'am.
3            **THE COURT:**  And are we talking -- this is the one
4    from 2019?
5            **AGENT VIGIL:**  I believe so, Your Honor, yes.
6            **THE COURT:**  Okay.  And is the victim the same victim
7    who is the alleged victim in this case?
8            **AGENT VIGIL:**  No, Your Honor.
9            **THE COURT:**  Okay.  And then with respect to the 2013
10   incident?
11           **AGENT VIGIL:**  The one that I do have that I was able
12   to retrieve the record for for battery was he was --
13   Mr. Marquez was involved in an altercation with another male,
14   at which time he was alleged to have hit the other male in the
15   head with a bat causing bruising to the face and as a result
16   the other male needed stitches.
17           **THE COURT:**  And was there is disposition in that case
18   or no?
19           **AGENT VIGIL:**  Nothing was required in that, ma'am,
20   Your Honor.
21           **THE COURT:**  All right.  And then I do have a notation
22   here, October 14, 2021, which was not that long ago, a failure
23   to appear on a misdemeanor charge.  Does anybody know anything
24   about that?
25           Mr. Vigil or Agent Vigil?

1         **AGENT VIGIL:** Your Honor --

2         **THE COURT:** Sorry.

3         **AGENT VIGIL:** I apologize, Your Honor.

4         Your Honor, I did --

5         **THE COURT:** No problem.

6         **AGENT VIGIL:** -- I did try looking that up. I saw
7 that the jail -- or where that was was in Raton. I did find
8 some state records however I cannot completely say that those
9 are specifically for that case. So I can't get anything beyond
10 what it's specifically saying as far as it's a probation
11 violation.

12         **THE COURT:** Yeah, I mean this is just a failure to
13 appear.

14         Do you have any more information about that,
15 Mr. Flores?

16         **MR. FLORES:** No, Your Honor. I asked Agent Vigil to
17 look into that and so it sounds like he didn't have a whole lot
18 of luck with it unfortunately.

19         I can say, and I just sent the Bates numbers to
20 Mr. Fooks on this, but at least in the 2013 instance an arrest
21 warrant was filed for Mr. Marquez. Whether it was actually
22 executed and whether there were follow-on charges, I'm not
23 sure.

24         **THE COURT:** And these are all Tribal police charges
25 though, right?

1    **MR. FLORES:**  That's right, Your Honor.

2    **THE COURT:**  Okay.  And I think we established last
3 time that this is not a presumption case, correct?

4    **MR. FLORES:**  (Audio glitch), Your Honor.

5    I do, before you render your decision though, I want
6 to address just a couple of points that Mr. Fooks raised.

7    **THE COURT:**  Sure.  Go ahead.

8    **MR. FLORES:**  So first, Your Honor, police in this
9 case, be it Tribal police or BIA, Tribal and BIA, attempted
10 multiple times to locate Mr. Marquez at his home and in the
11 community.  They knocked at his gate at his home multiple
12 times.  And that was audible, not just because I think they
13 tried to do so in an audible manner, but because it did I think
14 arouse three dogs that are fenced in within that property who
15 make some noise when strangers come by.

16    You'll recall, Your Honor, that Mr. Marquez engaged
17 in some telephone calls from the facility where he's being
18 held, which Agent Vigil has listened to, one of which -- in one
19 of which he discusses the fact that on the day he was finally
20 arrested he was approaching his home, noticed a vehicle nearby
21 or on the way to his home, and that's (audio glitch) along the
22 highway (indisc.) Wingate, that he believed was a police car,
23 that he turned around to go back toward Espanola in order to
24 avoid the interaction with the police and the officer happened
25 to know what kind of vehicle Mr. Marquez drove and then engaged

1  him at that time.  And so Mr. Marquez shared on the phone that
2  he had been attempting to avoid that interaction because he
3  knew there was an arrest warrant out for him and he was trying
4  to avoid its execution and being brought into custody.
5           There is not failure to appear, Your Honor.  It is
6  deserving of only the weight you're probably going to give it
7  since we can't give you any additional facts about it.
8  Nevertheless, it's in the system for law enforcement and for
9  Pretrial Services to see.  So there is a Court in this state
10 that has deemed that he failed to appear on some matter,
11 whether that's a ticket or a misdemeanor or a felony charge we
12 can't say.
13          Is -- the final thing I'd say, Your Honor, is is this
14 person a danger to the community?  We're not able to say right
15 now that he would be a threat, an ongoing threat to Jane Doe 1
16 and Jane Doe 2.  But it's worth keeping in mind again that the
17 Grand Jury returned an Indictment against the Defendant for
18 child abuse alleging torture of a five-year-old little girl,
19 one that was helpless and defenseless against most adults, but
20 especially a person of the size and stature of Mr. Marquez.
21 He's a danger to the community for having undertaken actions
22 like that and for the fact that there is prior domestic
23 violence history, even if not prosecuted.  There are victims
24 who will say that they were -- at least one victim who will say
25 she was hit by the Defendant in a domestic context.  And then

1 the child abuse in this case was ongoing for a month. And
2 you'll recall that for instance he would have the child cover
3 her face in public in order to cover the bruising that he
4 caused her.
5 　　　　　So we submit, Your Honor, that he is a danger to the
6 community for his past acts, he is a flight risk for the fact
7 that he avoided police consciously and intentionally for weeks
8 while he knew that there was an arrest warrant in his name in
9 his community.
10 　　　　　**THE COURT:** And as I recall, you indicated that the
11 SANE examination, it was observed that there was bruising,
12 scarring, and bite marks on Jane Doe Number 2, right?
13 　　　　　**MR. FLORES:** (Audio glitch), Your Honor.
14 　　　　　**THE COURT:** What?
15 　　　　　**MR. FLORES:** That's right, Your Honor.
16 　　　　　**THE COURT:** Okay. All right, I am going to find,
17 Mr. Fooks, that by clear and convincing evidence that no
18 condition or combination of conditions of release will
19 reasonably assure the safety of any other person in the
20 community and also by a preponderance of the evidence that no
21 condition or combination of conditions of release will
22 reasonably assure the Defendant's appearance as required.
23 　　　　　Of course, the allegations here with respect to the
24 child abuse and the evidence is quite troubling. At least by
25 the Government's proffer I would say that the evidence against

1 Mr. Marquez, and of course I recognize that it's a bit lopsided
2 at this point, but the evidence against Mr. Marquez is strong
3 with respect to the child abuse offense.  Not only the
4 circumstances of the child's discovery, I suppose, I think
5 lends support to the mother's alle -- I mean the mother's
6 rendition of events, plus her own bruising, scarring, and bite
7 marks and obviously the injuries that the child suffered all
8 corroborate their way -- the facts as they state them, as well
9 as the other things that were found during the execution of the
10 search warrant that Mr. Flores mentioned.
11 　　　　　I also base my findings on the it looks like a bit of
12 a pattern of domestic violence against various people.  Not
13 just Jane Doe Number 2, but other individuals that Mr. Marquez
14 may come into contact with.
15 　　　　　I also find that the information the proffer provided
16 to me regarding his trying to evade arrest in this particular
17 case as well as his one prior failure to appear indicates that
18 he is a flight risk.
19 　　　　　So for those reasons I will order that Mr. Marquez
20 remain in custody.
21 　　　　　And of course, Mr. Marquez, this is not your -- it's
22 not your last stop.  If you want to appeal my decision, it's
23 certainly your right to do so, and you may appeal if you
24 desire.
25 　　　　　All right, now, so with that I think we've covered

18

1  everything we need to cover here today in Mr. Marquez's case.
2           Do you have anything further, Mr. Fooks?
3           **MR. FOOKS:**  I do not, Your Honor.
4           **THE COURT:**  All right.  Mr. Flores, do you have
5  anything further?
6           **MR. FLORES:**  No, Your Honor.  Thank you.
7           **THE COURT:**  All right, thank you, Mr. Marquez, you
8  are excused.
9           **THE DEFENDANT:**  Thank you, Your Honor.
10      **(This proceeding was adjourned at 1:35 p.m.)**

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____          December 21, 2021
          Signed                                Dated


*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**