UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 1:21-CR-01510-KWR |
| | ) | |
| Plaintiff, | ) | CRIMINAL |
| | ) | |
| vs. | ) | Albuquerque, New Mexico |
| | ) | |
| CHRISTOPHER MARQUEZ, | ) | Friday, November 12, 2021 |
| | ) | |
| Defendant. | ) | (1:43 p.m. to 2:14 p.m.) |


ARRAIGNMENT / DETENTION HEARING

BEFORE THE HONORABLE LAURA FASHING,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiff:            ALEXANDER F. FLORES, ESQ.
                          U.S. Attorney's Office
                          P.O. Box 607
                          Albuquerque, NM 87103

For Defendant:            DEVON FOOKS, ESQ.
                          Federal Public Defender's Office
                          111 Lomas Blvd. NW, Suite 501
                          Albuquerque, NM 87102

U.S. Pretrial/Probation: Anthony Galaz

Court Reporter:           Recorded; Liberty: Hondo-Remote

Clerk:                    N. Maestas

Transcribed By:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1    **Albuquerque, New Mexico; Friday, November 12, 2021; 1:43 p.m.**

2                        **(Remote appearances)**

3                        **(Call to Order)**

4            **THE CLERK:**  *United States versus Christopher Marquez.*

5            **THE COURT:**  May I have appearances please.  Let's

6    see.  We can't hear you, Mr. Flores.

7            **MR. FLORES:**  Is that better, ma'am?

8            **THE COURT:**  That is better, not great but better.

9            **MR. FLORES:**  All right.  Sorry about that; I was

10   unmuted; but again, Alexander Flores for the United States.

11           I was not present today for your advisement but I do

12   understand the United States' obligations under the Due Process

13   Advisement that you normally provide.

14           **THE COURT:**  Well, have I done it in this case before?

15   Were we -- did we do it on the initial appearance?

16           **THE CLERK:**  You did.

17           **MR. FLORES:**  Yes, ma'am, I think you did.

18           **THE COURT:**  Okay, all right well thank you then I

19   think that takes care of it.

20           **MR. FOOKS:**  Devon Fooks on behalf of Mr. Marquez,

21   Your Honor.

22           **THE COURT:**  All right.  Good afternoon to all of you.

23           We are here this afternoon for both an Arraignment

24   and a Detention Hearing in this case but before we get to that,

25   we need to talk about the fact that we are doing this by video.

1          Mr. Fooks, did you have a chance to talk to

2 Mr. Marquez about the fact that we're doing it by video?

3          **MR. FOOKS:**  I did.

4          **THE COURT:**  Did we get a waiver?

5          **MR. FOOKS:**  No, we are working on it but I've been

6 talking to Mr. Marquez for the better part of the past 20

7 minutes or so and I haven't seen him sign anything.  So my

8 guess is that the waiver hasn't made it from the Internet or

9 from email to Mr. Marquez yet but we did discuss waiving his

10 appearance.

11          **THE COURT:**  Okay.  Mr. Marquez, I know that we saw

12 you just the other day.  Did you receive another Waiver of

13 Personal Appearance for today's hearing?

14          **THE DEFENDANT:**  No, Your Honor, I have not.

15          **THE COURT:**  All right.  Well again, I'll do the

16 waiver orally; but Mr. Fooks, I'd like to make sure that you

17 get the written waiver and that we get it on file.

18          All right.  So Mr. Marquez, we obviously are

19 conducting this hearing by video.  And it's my understanding,

20 as Mr. Fooks just told us, that you did have an opportunity to

21 talk to him before the hearing about the fact that we would be

22 doing this by video.  Is that true?

23          **THE DEFENDANT:**  Yes, Your Honor.

24          **THE COURT:**  Did he explain to you that we're doing it

25 this way because of the COVID 19 pandemic and we're just trying

4

1  to keep everybody as safe as possible?

2          **THE DEFENDANT:**  Yes, Your Honor.

3          **THE COURT:**  All right.  And so normally I would have

4  you sign a written waiver but I just want to make sure that

5  after you spoke with Mr. Fooks, are you in agreement with

6  proceeding with this hearing by video?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  Is anybody forcing you to agree to that

9  or has anybody threatened you to get you to agree to do this by

10 video?

11         **THE DEFENDANT:**  No, Your Honor.

12         **THE COURT:**  All right.  I find that you have

13 knowingly and voluntarily waived your right to be personally

14 present in the courtroom for this hearing and that instead

15 you've agreed to proceed by video.

16         All right.  So as I mentioned, we are here for an

17 Arraignment and a Detention Hearing.  We're going to do the

18 Arraignment aspect of the hearing first.

19         And so let me ask you, Mr. Marquez, have you received

20 a copy of the indictment that's pending against you?

21         **THE DEFENDANT:**  Yes, Your Honor.

22         **THE COURT:**  Have you had a chance to read that

23 indictment and discuss it with Mr. Fooks?

24         **THE DEFENDANT:**  Yes, Your Honor.

25         **THE COURT:**  Have you discussed with Mr. Fooks both

5

1   the charges that you are facing, as well as the potential

2   penalties?

3           **THE DEFENDANT:**  Yes, Your Honor.

4           **THE COURT:**  Do you understand what those charges are

5   and what the potential penalties are?

6           **THE DEFENDANT:**  Yes, Your Honor.

7           **THE COURT:**  Mr. Fooks, what is your position with

8   respect to reading the indictment?

9           **MR. FOOKS:**  Mr. Marquez will waive a formal reading

10  and enter a plea of not guilty to all four of the counts

11  contained in the indictment.

12          **THE COURT:**  All right.  So I will enter a not guilty

13  plea on your behalf, Mr. Marquez, as to the four counts in the

14  indictment.

15          This case is assigned to Judge Riggs and she will set

16  the trial date.

17          Your motions are due on December 2nd and I will issue

18  a standard discovery order.

19          Now, with respect to detention, let me first ask the

20  Government.  Are you in agreement with the recommendation of

21  Pretrial Services?

22          **MR. FLORES:**  I believe so, Your Honor, let me just

23  pull that back up -- for continued detention, yes.

24          **THE COURT:**  Yes.  All right.

25          And Mr. Fooks, what is your position?

1    **MR. FOOKS:**  Your Honor, we would ask that Mr. Marquez

2 be released on his own recognizance, or if Your Honor desires

3 some additional safety or precautions, that he be allowed to

4 reside at the La Pasada Halfway House.  I'm prepared to make

5 argument on that if you'd like to hear it now or whenever

6 you're ready.

7         **THE COURT:**  Well since it's the Government's burden

8 here, I will start with the Government; and ask you,

9 Mr. Flores, if you will tell me why it is you think that

10 Mr. Marquez is either a flight risk or a danger to the

11 community.  And also, could you please tell me whether, from

12 your perspective -- sorry, is this a presumption case or not --

13 so if you would address those issues and then I'll hear from

14 Mr. Fooks.

15        **MR. FLORES:**  Your Honor, thank you.  I could be wrong

16 but I do not believe it's a presumption case based on the fact

17 that it is an assimilated crime.  I could be wrong; I'd be

18 happy for you to correct that, Your Honor, but I don't believe

19 it is.

20         I'll start, Your Honor, with the nature of the

21 charges.

22         The top line, Count One, is *abuse of a child*.  You

23 can see from the language in the indictment, the allegation is

24 that the Defendant allowed a child under the age of 18; and in

25 fact, in this case, that child was the age of five years old --

1   to be tortured, cruelly confined or cruelly punished.  And the

2   United States will allege that it's not that he allowed or

3   rather that he caused -- I'll go back to the language -- I'm

4   sorry.  Without justifiable cause, permitted that child to be

5   tortured, but that he actually engaged in that conduct himself,

6   physically, intentionally, and willfully against that child in

7   his home over the course of about a month.

8            The evidence in this case is strong; and as the other

9   counts allege, the Defendant also beat and assaulted Jane Doe 2

10  who is the child's mother.  So the weight of the evidence again

11  is strong.

12           A search was conducted of the home where Mr. Marquez

13  resides.  I can't say that he owns it -- it is on pueblo

14  land -- although he may -- but it was certainly his home.  His

15  driver's license was found there, his personal effects were

16  found there; and the scene as described by the victims, matched

17  what was found there by the agents.

18           There were instruments of the crime -- the crimes,

19  plural, that were found in that home and there's also evidence,

20  Your Honor, of the Defendant's consciousness of guilt; that is,

21  he intentionally hid from police for some amount of time,

22  months, and on the day that he was arrested, noticed that

23  police were nearby, attempted to flee.  And by "fleeing" I

24  don't mean a high-speed pursuit or anything of that nature, but

25  he saw police while he was close to his home and on the way to

1   his home and turned around to avoid them, to avoid it looking

2   like it was in fact him but he was pulled over by an officer in

3   the pueblo who recognized either him or the car he was in in

4   order to effectuate the arrest.

5          An arrest warrant had been out for the entire period

6   between the last day of the allegations here and when he was

7   finally arrested.  That arrest warrant was issued by the pueblo

8   and of course there was no arrest warrant in the federal system

9   until the indictment was brought by the grand jury.

10  Nevertheless, during the entire period, he was not only a

11  flight risk but had been fleeing police and hiding from police

12  willfully.

13         Later, BIA Agent Donald Vigil interviewed the

14  Defendant briefly and he didn't provide much information.

15  There was a rights advisement and such that he waived but he

16  did ask Agent Vigil, "Did you come by my house in a" -- and he

17  described a certain type and color of truck because he'd been

18  watching for police to come by his home and police and the

19  agents knocked on his gate, attempted to get his attention on

20  multiple occasions because they believed he was home and he was

21  not forthcoming.  Now --

22         **THE COURT:**  You --

23         **MR. FLORES:**  Go ahead.

24         **THE COURT:**  I'm sorry, I just wanted to say, you said

25  the evidence was strong but tell me about that evidence.

1          **MR. FLORES:**  Sure.

2          So Your Honor in this case the child and the mother

3     allege that the Defendant abused the child for over a month by

4     intentionally inflicting bodily harm upon her.  She was

5     admitted to a hospital in Espanola and then life-flighted to

6     the University of New Mexico for higher echelon care where it

7     was determined that she had multiple broken ribs, a broken

8     wrist, she had lacerations to her organs internally and some

9     other injuries from the abuse.

10          The allegations are that the Defendant would force

11    her to do wall sits for hours on end, that he would strike and

12    punch her, that he would tie her legs together with an exercise

13    band and pull it out from under her when she wasn't acting in a

14    manner satisfactory to him.

15          Agents in the home found evidence of a place in the

16    wall where he had thrown the child into the wall.  And the

17    mother would describe how she could hear her child being thrown

18    into the wall in the other room and there's evidence of that as

19    well as blood on the walls, we believe, though there were swabs

20    taken and those are being tested but believe that there was

21    blood on the wall.

22          And then some of the instruments that were used in

23    the course of the abuse were also found.  For example, the

24    child would allege that the Defendant would hit her with

25    children's books on her back and on her buttocks until the

10

1    bindings on those books would break.  Those books were found,

2    one or two of them at least.  The exercise band that was

3    allegedly used was found in that home.

4            The Defendant would tie pants of -- that belonged to

5    an older child of his around the face and eyes of the abused

6    child here and the child was able to describe that those were

7    pink pants.  The mother described that they were probably of a

8    certain size and the agents found that particular pair of pants

9    that matches the description of what was used on the child

10   which, by the way, the tying of those pants around the child's

11   eyes also caused injuries to her eyes.

12           Additionally, Your Honor, the child alleges that the

13   Defendant would sometimes record the beatings, the assaults on

14   his cellphone.  Electronics in this case have been seized,

15   although they have not yet been searched owing to a backlog at

16   the laboratory as to handle that kind of work but there's

17   reason to believe that some videos may be stored which would

18   provide further evidence of the actual abuse, direct evidence.

19           Your Honor, with that I'm also moved just to say as

20   you look to the Pretrial Services Report, there is a pattern of

21   similar violent criminal history; in particular, domestic

22   violence.  And so based on the nature of the crimes alleged

23   here, based on this history, the United States offers that the

24   Defendant is both a danger to the community, as well as a

25   flight risk.

1          In fact, the victims here, Your Honor, have

2   essentially fled.  They are in hiding.  We are in touch with

3   them so we do have contact with them and they are willing

4   participants in the prosecution but they have essentially cut

5   themselves off from their networks that the Defendant is aware

6   of so that he may not be able to access them in potential safe

7   houses in the local community, for example, where they might

8   seek safe haven.

9          I should return just to your question quickly, Your

10  Honor, about the strength of the charges, the counts, the

11  allegations in this case.

12         To Counts Two through Four which deal with Jane Doe 2

13  who is an adult, there is also substantial evidence that these

14  counts are true.  For example -- or that they are

15  substantiated.

16         For Counts Three and Four, the abusive sexual

17  contact, the victim alleged, for example, that the Defendant

18  would use a long silver shoehorn being a foot or two in length

19  and that was found in the bedroom where he resided hanging near

20  the bed.  And a shoe brush or another type of shoehorn that was

21  used in the bathroom, per the victim's allegation, was also

22  found on the premises.

23         Finally, I'll say Your Honor --

24         **THE COURT:**  And those were used to assault the victim

25  sexually?

1              **MR. FLORES:**  That's right, Your Honor.

2              So the shoehorn, for example, was used to strike the

3    victim on her buttocks without her consent to the point of

4    causing bruising and extreme pain.  When she would say to stop,

5    she would try to stop it herself and he wouldn't allow it.  And

6    in fact he would say to the victims in different contexts, to

7    the adult victim in Counts Three and Four, to the child victim

8    in Count One -- which we're not alleging is a sexual assault

9    but he would say to both of them in those different contexts

10   that he was asserting himself as the alpha, as the dominant

11   force in the household, and so he wasn't taking kindly to them

12   saying no or to stop.  He would continue to inflict that abuse.

13             **THE COURT:**  All right.  And what about Count Two?

14             **MR. FLORES:**  Count Two, Your Honor, is based on an

15   allegation by the adult victim of having been strangled during

16   the course of assaults.  That happened at a time long before

17   the reports were made and so I'm not offering evidence as to

18   Count Two for danger to the community or flight risk based on

19   the strength of the other three counts at this time.

20             **THE COURT:**  All right.  Was there any physical

21   evidence found on the adult victim with respect to this abuse?

22             **MR. FLORES:**  I don't recall that there was, Your

23   Honor.

24             **THE COURT:**  And then remind me what the potential

25   penalties are.

1          **MR. FLORES:**  Your Honor, the potential penalty for

2    Count One is 18 years of incarceration, a fine of up to

3    $15,000; up to three years of supervised release, and of course

4    for all four counts the special penalty assessment.

5          For Count Two, up to 10 years of incarceration, and

6    now for Counts Two through Four, they all have the $250,000

7    fine.

8          And for Counts Three and Four, zero to three years of

9    incarceration; and specifically, not less than five years and

10   up to life of supervised release for each of those two.

11         **THE COURT:**  All right.  Sorry, did you have anything

12   else?

13         **MR. FLORES:**  I want to address, Your Honor, the

14   question of injuries to the adult.  Let me bring that up.

15         **(Pause)**

16         There were injuries observed on her body during an

17   examination where she disclosed the domestic violence.  They

18   included bruises, scarring and bite marks.  They are attributed

19   to the Defendant specifically.  This was during the course of a

20   SANE examination.  And the adult victim did disclose during

21   that examination that -- and this was to a medical provider --

22   that the sexual assault was related to domestic violence and

23   that the partner did use forms of violence and she said yes.

24   She also divulged there or revealed that she had been strangled

25   or choked by the abuser during those periods.

1      **THE COURT:**  And I'm sorry.  The injuries were what?

2  They were bite marks and what else?

3      **MR. FLORES:**  Bruises, scars and bite marks.

4      **THE COURT:**  Okay.

5      **MR. FLORES:**  So obviously, Your Honor, that

6  particular charge is very specific.  113(a)(8) to strangling

7  and suffocating.  So as I say, there was evidence of bite

8  marks.  There are allegations of biting but you don't see that

9  here in the indictment so I don't want to use that as evidence

10  per se but you did ask were there any injuries observed and

11  there were and they were attributable to the Defendant.

12      **THE COURT:**  All right.  And then and I just was -- I

13  don't know if you know any of this information but I suppose

14  it's possible.  I think for a minute your agent might have been

15  on here but there was -- there's an indication that he failed

16  to appear on a misdemeanor charge on October 14th.  Do you know

17  anything about that because that wasn't all that long ago.  Do

18  you know what that charge was for?

19      **MR. FLORES:**  No, Your Honor.  I know of a 2013

20  instance -- oh, I see, October 14th.  I do not know, Your

21  Honor.

22      **THE COURT:**  Okay.  And so earlier there was two prior

23  batteries against a household member where the disposition is

24  unknown.  Do you know anything about those?  One was in 2013,

25  the other in 2019.

1          **MR. FLORES:**  I do, Your Honor.  I don't believe those

2   were pursued fully based on victim participation.  But if you'd

3   like more information, either we can bring the agent on --

4   although I don't know if he has information on those either, or

5   I can try to dig into that for you in just a few minutes.

6          **THE COURT:**  I just wonder who the victim is, if it's

7   either of the victims here.

8          **MR. FLORES:**  They were not the same victims but they

9   were prior members of a domestic household, you know,

10  ex-girlfriend, et cetera.

11         **THE COURT:**  All right.  And the victim here, I note

12  in the Pretrial Services Report there's -- the Defendant's

13  ex-wife provided some information and I just wonder -- and

14  again, I'm assuming that that person is not the adult victim in

15  this case.  Is that correct?

16         **MR. FLORES:**  That's right, Your Honor.

17         **THE COURT:**  All right.  All right.  So Mr. Fooks, I

18  will hear from you.

19         **MR. FOOKS:**  Well that's a pretty big proffer, Your

20  Honor, all I have is the indictment.  I'm kind of at a

21  disadvantage here as I don't have any of that information.  So

22  I'll make what argument I can but I'm going to ask that the

23  information that Mr. Flores was relying on to make his proffer

24  to the Court, that I be allowed to see that and address it

25  before the Court makes a final ruling.  I mean he just spoke

1   for about 20 minutes on a bunch of information that I've never

2   seen before and I can't address.

3            **THE COURT:**  Sure.  I mean do you want -- I don't know

4   what you want to do about that.  We could -- we could -- we

5   could continue this.  We could also -- I mean if you wanted

6   some time, we could put the agent on for testimony and you

7   could cross examine.  I mean I know -- I understand that

8   especially in these types of cases where you don't have a

9   criminal complaint, you know, there's going to be a lot of

10  information that it's hard for you to address because this is

11  the first time you're hearing about it.

12           **MR. FOOKS:**  Yeah.  I think what I should have said,

13  Your Honor, is I think we're going to need a continuance.  I

14  haven't spoken with Mr. Marquez about anything Mr. Flores said.

15  I certainly have some thoughts on some of the other things but

16  it occurs to me that it may be best however Your Honor wants to

17  handle it but that you hear it all at once instead of piecemeal

18  from me, in other words, doing some now and then some when we

19  continue it later.  But I can address what I can now or we can

20  -- it seems to me the more prudent path wants you to continue

21  it but I'll do it however Your Honor likes.

22           **THE COURT:**  It's --

23           **MR. FLORES:**  Your Honor, I think the agent might be

24  in the waiting room if that factors into your decision.

25           **THE COURT:**  No, I think --

1          **MR. FOOKS:**  It doesn't factor into mine.  It's not

2    the agent that I'm worried about; it's talking to Mr. -- it's

3    talking to Mr. Marquez a little bit more about it and seeing

4    some of these allegations because just off the top of my head,

5    Counts Three and Four, based on what Mr. Flores said it sounds

6    like they should be dismissed.  It doesn't sound like it was

7    for sexual gratification, they sound like assaults or

8    aggravated assaults to me.

9          **THE COURT:**  Well obviously these are indictments and

10   so I'm not going to --

11         **MR. FOOKS:**  I understand but in terms of talking

12   about the strength of the case.

13         **THE COURT:**  Sure.

14         **MR. FOOKS:**  I wasn't moving for it to be dismissed;

15   I'm just saying that's an issue that jumps out right away when

16   we talk about the strength of the case.  Well, it's a problem

17   as I see --

18         **THE COURT:**  Sure --

19         **MR. FOOKS:**  -- it anyway.

20         **THE COURT:**  Although that kind of conduct can relate

21   to danger to the community, whether it's actually in support of

22   a particular count or not, right?

23         **MR. FOOKS:**  No question, Your Honor, no question --

24         **THE COURT:**  Okay.

25         **MR. FOOKS:**  And as long as we're talking about the

18

1   strength of the case I mean that's -- it sounds like a he-said-

2   she-said which does not sound like a strength, a very strong

3   case; it sounds like a 50/50 proposition at best; but again,

4   I'd know that Mr. Flores has proffered a bunch of other

5   evidence that I'm not able to meet.  So let me just go ahead

6   and move to continue the detention hearing and just let Your

7   Honor rule on that before we get too far into it.

8           **THE COURT:**  Okay.  Well my problem is is that my last

9   day of duty is Monday.  Do we have Santa Fe on Monday?

10          **THE CLERK:**  We actually do so it's not going to be an

11  issue.

12          **THE COURT:**  Can we do it till Monday, Mr. Fooks?

13          **MR. FOOKS:**  Sure.  If Mr. Flores can send me that

14  information, I'd really appreciate it.

15          **THE COURT:**  Umm --

16          **MR. FLORES:**  So --

17          **THE COURT:**  Go ahead.

18          **MR. FLORES:**  So Your Honor -- and Mr. Fooks, sir,

19  Wednesday, we sent you a proposed motion for a protective order

20  and we haven't heard back on that.  So I intend to give you

21  everything but hopefully under the auspices of a protective

22  order.

23          **MR. FOOKS:**  Sure, I don't oppose.  You can note that.

24          **MR. FLORES:**  Okay.  So Your Honor, we'll file that

25  and if that could be acted upon and then try to push everything

1    out as soon as we can here.

2             THE COURT:  Okay, yes.  So I'm going to note that

3    Mr. Fooks, you do not oppose the proposed protective order that

4    Mr. Flores sent to you.  And given your non-opposition, if

5    Mr. Flores forwards -- I'm assuming I -- can I sign off on that

6    given that it's assigned to Judge Riggs?  Normally I think she

7    would sign off on it.  I'm wondering if we could get Judge

8    Riggs to sign off on it today.  I would think we probably could

9    but I actually don't know for a fact that she's here today but

10   I think -- who's her courtroom, it's --

11            MR. FLORES:  Carol Bevel.

12            THE COURT:  Oh, okay.  Ms. Maestas, do you think we

13   could see if we could get that signed off on today?  And as

14   soon as that's signed off on, Mr. Flores, you can send what you

15   have to Mr. Fooks?

16            MR. FLORES:  Yes, ma'am.

17            THE COURT:  All right.  Does that seem adequate?

18            I suppose, Mr. Fooks, if you need a further

19   continuance, you might want to file some sort of motion.  Does

20   that seem okay?

21            MR. FOOKS:  That's fine, Your Honor.  Yeah, I can do

22   that.

23            THE COURT:  Okay.  But given -- let's go ahead and

24   reset this hearing for Monday afternoon at 1:30.  And let me

25   just ask you, Mr. Flores, do you have any objection to that?

1          **MR. FLORES:**  No, Your Honor, it's entirely

2   reasonable.

3          **THE COURT:**  Okay.  And I would ask that you have your

4   agent available at that hearing too, okay?

5          **MR. FLORES:**  Yes, ma'am.

6          **THE COURT:**  Okay.  All right.  So Mr. Marquez, you've

7   heard all this.  We're going to take this up again on Monday.

8   Mr. Fooks obviously needs a chance to look at some of the

9   information that was provided by Mr. Flores and in order for

10  him to address the issue of detention.  So we'll just continue

11  this until Monday afternoon at 1:30 but until then,

12  Mr. Marquez, I will order that you remain in custody.  All

13  right?

14         **MR. FOOKS:**  Wait a second.  At 1:30, Your Honor?

15         **THE COURT:**  Yeah.  I think that's when we have Santa

16  Fe.

17         **MR. FOOKS:**  I thought it would be 8:30.  I'm actually

18  giving a presentation on DNA evidence at 1:30 on Monday

19  afternoon.

20         **THE CLERK:**  We can do --

21         **THE COURT:**  Well what are our other choices,

22  Ms. Maestas?

23         **THE CLERK:**  I mean we have at 1:30 a plea

24  agreement -- I mean a plea hearing and then two other cases so

25  maybe 2:30?  I don't know if later in the afternoon works?

1           **MR. FOOKS:**  Actually I'm looking at it now.  The

2   presentation's at 2:00 o'clock.  I'm looking at -- I'd note

3   that we have Mr. Vigil on the calendar for 1:30.  And I was

4   going to talk to Your Honor about that once we went off the

5   record on this case to give you an update.  I mean, there's

6   like 60 people coming to this presentation.  I don't know if we

7   can move it.

8           **THE COURT:**  Sure.

9           **THE CLERK:**  You want to do it (indisc.) clock?

10          **THE COURT:**  Can we do -- what's another day that we

11  might be able to do Santa Fe?

12          **THE CLERK:**  I can't tell you that right now.  There's

13  like -- I ...

14          **THE COURT:**  Well, I don't know what to do.

15          **THE CLERK:**  I don't have the schedule --

16          **THE COURT:**  How long is your presentation going to

17  last?

18          **MR. FOOKS:**  I have it scheduled from 2:00 to 4:00.

19          **THE COURT:**  Okay well we can't do it after 4:00.

20          **MR. FOOKS:**  I can do it at 1:00.

21          **THE COURT:**  Do you think we can schedule Santa Fe at

22  1:00?

23          **THE CLERK:**  Yes, I think we can.

24          **THE COURT:**  All right.  So let's -- we'll have to

25  note that we need to start right at 1:00 o'clock.

22

1          **MR. FOOKS:**  Thank you.

2          **THE COURT:**  Right at 1:00 o'clock on Monday to finish

3   this detention hearing; but again, until then, Mr. Marquez, I'm

4   going to order that you remain in custody.

5          All right.  But we'll reconvene at 1:00 o'clock on

6   Monday.

7          Yes, Ms. Maestas?

8          **THE CLERK:**  I'm sorry.  I just want to make sure.

9   Was the order submitted to Judge Riggs' chambers?

10          **MR. FLORES:**  It has not been.

11          **THE CLERK:**  Okay.  Will you do that, is it possible

12   because I'm messaging her courtroom deputy and she is going to

13   let Judge Riggs know.  She's not in the office though but the

14   sooner we can get it -- or that you can get it to her so that

15   she can get it signed off.

16          **MR. FOOKS:**  And just -- I'll just put this on the

17   record for whatever it's worth, Mr. Flores.

18          I've agreed to your -- I'm not opposing the

19   protective order.  If you send me the discovery, I will not

20   show it to anyone.  It'll reside on my computer and that's

21   where it'll stay; I won't disclose it to anybody else, most

22   importantly.  I obviously will not be sending it to Mr. Marquez

23   for what it's worth.

24          **MR. FLORES:**  That says a lot.  So Your Honor what I'm

25   going to do is get on the ball to get Mr. Fooks the evidence

23

1  right now, send Carol, Ms. Bevel, the documents, get that ball

2  rolling and then formally file the documents in CM/ECF last

3  instead of first.

4          **THE COURT:**  Okay, that sounds fine.

5          **MR. FLORES:**  All right.  Thank you.

6          **MR. FOOKS:**  Thank you, Mr. Flores, I appreciate it.

7          **MR. FLORES:**  Thank you, sir.

8          **THE COURT:**  All righty.  So we'll see everybody again

9  at 1:00 o'clock on Monday.

10         **MR. FOOKS:**  Sounds good, Your Honor.

11         **MR. FLORES:**  Thank you, Your Honor.

12         **THE COURT:**  All right.

13      **(Proceeding adjourned at 2:14 p.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

24

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    December 28, 2021

           Signed                                                                    Dated

*TONI HUDSON, TRANSCRIBER*